NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 230961-U

NO. 4-23-0961

IN THE APPELLATE COURT

FILED
December 20, 2023
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| KENNETH D. DOWNEY, | ) | No. 23CF708 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Amy L. McFarland, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice DeArmond and Justice Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State was authorized to file its verified petition to deny defendant pretrial
release, and the trial court did not abuse its discretion in finding that defendant's
charge of aggravated assault involved the threat of great bodily harm and that no
combination of release conditions could prevent the real and present threat that
defendant's pretrial release posed to the safety of the community.

¶ 2    Defendant Kenneth D. Downey appeals the trial court's order denying him pretrial

release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110

(West 2022)), which was recently amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly

known as the Pretrial Fairness Act (Act). See *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting the stay

of the Act's pretrial release provisions and setting their effective date as September 18, 2023).

Defendant argues that (1) the State had no authority to seek detention, (2) he was not charged with

a detention-eligible offense, and (3) the trial court erred by finding that no combination of release

conditions could prevent the real and present threat he posed to the safety of the community. We disagree and affirm.

¶ 3                                                  I. BACKGROUND

¶ 4          In July 2023, officers with the Le Roy Police Department learned of concerning conduct by defendant, including text messages he sent on July 11, 2023, stating:

> "I am waiting for my end day. When they come to try and take my kids, I will be prepared. I was not prepared for the government when I was six years old, but I am most certainly prepared now. It will make headline news. And I haven't done anything wrong to be in this situation. But it is okay. We all got to die somehow."

¶ 5          Defendant previously had two children residing with him, aged 13 and 15, but only one of them was still at the residence. Defendant reportedly stated that "he would take out as many people from [the Illinois Department of Children and Family Services] as he could if they came to get his child." Fourteen loaded firearms were positioned within various rooms of defendant's residence, including the children's bedrooms. On July 15, the Le Roy Police Department obtained a firearm restraining order against defendant and a search warrant for his residence, but due to defendant's threats against government personnel, they asked the Illinois State Police to take over the operation. On July 17, the Illinois State Police were able to get defendant's child out of his residence and to a safe location. They then used false pretenses to lure defendant to the Le Roy Police Department.

¶ 6          Defendant arrived in the police department lobby with a loaded handgun hidden in his waistband, along with two spare magazines. Illinois State Police Special Weapons and Tactics (SWAT) officers and several additional officers rushed defendant, who placed his hand on the gun as they approached. The officers managed to subdue defendant and take the gun; they reportedly

believed that defendant was attempting to draw the gun on them. Defendant was then arrested and taken into an interview room. When Le Roy Police Chief Jason Williamson entered the room to conduct an interview, defendant kicked him in the forearm.

¶ 7          Defendant was charged with aggravated battery (720 ILCS 5/12-3.05(d)(4) (West 2022)), resisting a peace officer (*id.* § 31-1(a)(1)), and carrying a concealed firearm in a prohibited area (430 ILCS 66/65(a)(5), 70(e) (West 2022)). Defendant failed to post monetary bond and remained in custody. On September 18, 2023, defendant filed a motion for reconsideration of his pretrial release conditions; the trial court set a hearing on the motion for September 22, 2023.

¶ 8          Shortly before the hearing, the State filed a Class 4 felony charge against defendant for aggravated assault by assaulting a peace officer while using a firearm, other than by discharging the firearm. 720 ILCS 5/12-2(c)(6), (d) (West 2022). The State also filed a verified petition to deny defendant pretrial release, asserting that the aggravated assault charge involved the threat of great bodily harm and was thus a detention-eligible offense. See 725 ILCS 5/110-6.1(a)(1.5) (West 2022) (defining "forcible felony" as including "any *** felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement"). Although defendant states in his supporting memorandum that the petition was unverified, the record reflects that an assistant state's attorney properly verified the petition by certification. See 735 ILCS 5/1-109 (West 2022) (providing for the verification of court filings by certification).

¶ 9          At the hearing, defendant first challenged the State's claim that the charged offense involved the threat of great bodily harm. After viewing a security camera video of the incident, the trial court concluded that this requirement was satisfied because defendant had reached for the loaded firearm in his waistband when he saw the SWAT officers approaching. The State then

proffered evidence of the allegations described above; defendant did not proffer any evidence in response.

¶ 10       The trial court ordered defendant detained, concluding that he posed a real and present threat to the safety of the community and that no combination of available release conditions could mitigate the threat, specifically citing defendant's attempt to use a dangerous weapon against others and his previous "statements *** indicating a desire and/or intention to harm certain persons or groups, if released."

¶ 11       This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13       At the outset, we note that that the State has not filed an optional responsive memorandum. See Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023) ("The response to the Notice of Appeal or appellant's memorandum may include a memorandum not to exceed 4500 words."). However, we choose to address the merits of this appeal because "the record is simple and the claimed errors are such that [this] court can decide them without the assistance of an appellee's [memorandum]." *People v. Cosby*, 231 Ill. 2d 262, 285 (2008) (citing *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976)). We think that this principle from *Talandis* is particularly relevant in cases under the Act, where the appellee's responsive memorandum is optional, but we nevertheless emphasize that this court will not "serve as an advocate for the appellee or *** search the record for the purpose of sustaining the judgment of the trial court." *Talandis*, 63 Ill. 2d at 133; see *People v. Inman*, 2023 IL App (4th) 230864, ¶ 13 ("[W]e doubt Rule 604(h) now requires the appellate court to act as an advocate or seek error on the appellant's behalf—something heretofore expressly forbidden.").

¶ 14 On the other side of the ledger, defendant raised an issue in his notice of appeal that he has not pursued in his supporting memorandum, namely that his charge for aggravated assault did not meet the definition of a forcible felony as set forth in the Code. See 725 ILCS 5/110-6.1(a)(1.5) (West 2022) (defining "forcible felony" as including specified felonies and "any *** felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement"). For appeals under the Act, the supreme court has adopted a belt-and-suspenders approach, under which "[t]he Notice of Appeal shall describe the relief requested and the grounds for the relief requested," and "[t]he appellant may file, but is not required to file, a memorandum not exceeding 4500 words." Ill. S. Ct. R. 604(h)(2) (eff. Sept. 18, 2023).

¶ 15 Although a liberal construction of the notice of appeal is appropriate to determine what issues the appellant can pursue in its optional memorandum (see *People v. Martin*, 2023 IL App (4th) 230826, ¶¶ 18-19), we find that issues raised in the notice of appeal but not pursued in the appellant's optional memorandum are forfeited unless the notice of appeal itself provides sufficient analysis for this court to decide the issue. *Inman*, 2023 IL App (4th) 230864, ¶ 13; see *Wolfe v. Menard, Inc.*, 364 Ill. App. 3d 338, 348 (2006) ("The appellant must argue the points that he or she raises, or they are waived. [Citation.] A conclusory assertion, without supporting analysis, is not enough. [Citation.]").

¶ 16 Defendant's notice of appeal could certainly include more detail, but his argument that he did not commit a forcible felony was explicitly raised at the hearing and ruled on by the trial court. Because the point is sufficiently clear and unchallenged by the State, as noted above, we will address it along with the court's other findings.

¶ 17 First, however, we dispose of defendant's argument that the State had no authority to file its petition to deny him pretrial release because the petition was untimely. See 725 ILCS

5/110-6.1(c)(1) (West 2022) (prescribing time limits for the State to file a verified petition to deny pretrial release). We addressed this argument at some length in *People v. Jones*, 2023 IL App (4th) 230837. Like the defendant in *Jones*, defendant here elected to move for reconsideration of his conditions of release, and the State responded by presenting its petition to deny defendant pretrial release at defendant's first appearance before a judge after the Act's postponed effective date. *Id.* ¶¶ 4, 22-24. We concur with the unanimous view expressed in *Jones* that the State is authorized to file a responding petition in these circumstances. *Id.* ¶ 24; *id.* ¶ 38 (Turner, J., specially concurring); accord *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 15 (agreeing that "the State may file a petition for the denial of pretrial release 'at the first appearance before a judge' after the effective date of the Act"). Accordingly, we find that the trial court did not err by conducting a hearing on the State's petition.

¶ 18      As for the trial court's findings at the hearing, we will uphold the court's decision unless it abused its discretion. *Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11 (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶¶ 9, 15). "An abuse of discretion occurs when the [trial] court's decision is 'arbitrary, fanciful or unreasonable' or where 'no reasonable person would agree with the position adopted by the trial court.' " *Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)). In addition to his argument that his aggravated assault charge was not a forcible felony, defendant argues in his notice of appeal and memorandum that the State failed to meet its burden of proving the available conditions of release could not mitigate the real and present threat he posed to the safety of the community. We disagree on both points.

¶ 19      On the first point, the trial court found that defendant's charge was a forcible felony because the video showed that "while SWAT and officers were able to detain the defendant, even

on the video it shows he had his hand on his—on the firearm as they entered into the building." It was not unreasonable for the court to conclude that defendant was threatening the officers with great bodily harm by continuing to have his hand on a loaded firearm as they approached him. See 725 ILCS 5/110-6.1(a)(1.5) (West 2022).

¶ 20    Similarly, the trial court did not abuse its discretion in finding that conditions such as electronic monitoring, no-contact orders, and a prohibition on owning firearms could not mitigate the threat defendant posed to the community. The State proffered text messages in which defendant said he was "prepared for the government," that his actions would "make headline news," and that "[w]e all got to die somehow." The State further showed that defendant could obtain a firearm with relative ease and that when he had one, he continued trying to draw it on police officers until he was subdued and taken into custody, after which he still kicked the chief of police. Based on defendant's text messages and his demonstrated refusal to cooperate with the authorities when he was armed, it was not unreasonable for the court to conclude that a before-the-fact prohibition on owning firearms would be insufficient even if combined with other conditions of release.

¶ 21                                III. CONCLUSION

¶ 22    For the reasons stated, we affirm the trial court's judgment.

¶ 23    Affirmed.