2023 IL App (1st) 231817-U

FIFTH DIVISION
December 21, 2023

No. 1-23-1817B

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Nos. 23 CR 0146601 23 CR 0146701 |
| | ) | 23 CR 0146801 |
| ALVIN JACKSON, | ) ) | Honorable |
| Defendant-Appellant. | ) ) | Laura Ayala-Gonzalez, Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Justices Lyle and Navarro concurred in the judgment.

**O R D E R**

¶ 1     *Held*: The circuit court's order granting the State's petitions for pretrial detention is affirmed. It was not an abuse of discretion to conclude that no conditions would mitigate the real and present threat to the safety of individuals or the community that would result from defendant's pretrial release or the risk of his willful flight.

¶ 2     Defendant Alvin Jackson appeals from the circuit court's order detaining him before trial, under both the dangerousness and the willful flight standards set out in section 110-6.1 of the Code of Criminal Procedure of 1963 (Code), as amended by Public Act 101-652, § 10-255, and Public

Act 102-1104, § 70 (eff. Jan. 1, 2023) (725 ILCS 5/110-6.1 (West 2022)), commonly known as the Pretrial Fairness Act. For the reasons that follow, we affirm the court's order of detention.

¶ 3                                    I. BACKGROUND

¶ 4      The State charged Mr. Jackson with multiple offenses in three separate cases, including predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1)) and aggravated criminal sexual assault of a victim under the age of 13 (*id.* § 12-14(b)). He was initially held on bond. When the amendments to section 110-6.1 of the Code took effect on September 18, 2023, however, Mr. Jackson elected, pursuant to sections 110-5(e) and 110-7.5(b) of the Code (725 ILCS 5/110-5(e), 110-7.5(b) (West 2022)), to have his pretrial conditions reassessed under the new statutory requirements.

¶ 5      The State then petitioned, in each of these three cases, for Mr. Jackson to be detained until trial. It argued that both the dangerousness and the willful flight standards of section 110-6.1(e) of the Code were satisfied because Mr. Jackson posed "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" and there was "a high likelihood of willful flight to avoid prosecution." It further argued that no condition or combination of conditions set forth in section 110-10(b) of the Code could mitigate those risks.

¶ 6      Mr. Jackson was present and represented by counsel at the hearing on the State's petitions, which was held on September 25, 2023. The State proffered the following facts in support of the charges against Mr. Jackson.

¶ 7      In cases No. 23 CR 0146601 and No. 23 CR 0146701, the State alleged that between July 1993 and October 1996, Mr. Jackson was in a dating relationship with the mother of J.J. and R.C. At the relevant times, J.J. was between 10 and 12 years of age and RC was between 9 and 11 years of age. At some point during this timeframe, J.J. woke up to Mr. Shaw removing her pants and

attempting to penetrate her vagina. He left the room to get Vaseline, rubbed it on her buttocks, and succeeded in penetrating her vagina.

¶ 8    With respect to RC, according to the State, on one occasion, Mr. Jackson entered R.C.'s room, penetrated her vagina with his penis, and ejaculated. On another, Mr. Jackson entered R.C.'s room and penetrated her anus with his penis while she was sleeping. And on a third occasion, he penetrated her mouth with his penis.

¶ 9    The State alleged in case No. 23 CR 0146801, that between August 2006 and January 2009, Mr. Jackson was in a dating relationship with the mother of C.C., and C.C. was between 6 and 8 years of age at that time. On one occasion, C.C. was watching cartoons in the living room when Mr. Jackson entered the room and pulled down her pants. He then placed Vaseline on her buttocks and made skin to skin contact between his penis and her anus. Mr. Jackson then instructed CC to go to the bathroom, where he penetrated her mouth with his penis and ejaculated in her mouth. The State alleges that on a separate occasion, Mr. Jackson lay in bed with C.C., put his hands down her pants, rubbed the outside of her vagina, and penetrated her vagina digitally. Although C.C. made a contemporaneous disclosure to her mother, "she felt pressure to not move forward with the case at that time" and only decided to report the incident to the police when she became an adult.

¶ 10   The State noted that if convicted as charged, Mr. Jackson would face life in prison.

¶ 11   The State explained to the court that it was also aware of three other potential victims, J.B., E.C., and S.E., but had not yet decided whether it would bring charges relating to those individuals. One, a minor, had indicated that Mr. Jackson touched her breasts and her vagina under her clothes. The second, also a minor, had indicated that "there was inappropriate touching" but did not provide specifics. And the third, an adult, alleged that Mr. Jackson inserted his penis in her mouth against her will. The State acknowledged that it was having trouble finding that witness.

3

¶ 12    The State went through Mr. Jackson's prior criminal history, which included a conviction for unlawful use of a weapon by a felon in 2019, convictions for possession of a controlled substance in 2000 and 1998, burglary and possession of a stolen title or certificate plate in 1987, and six misdemeanor convictions, including one for battery in 2008. The State noted that in the pretrial services assessment, Mr. Jackson had scored a four on the failure to appear scale and that he had had "multiple failures to appear throughout his criminal history," including in 2012 and 2022. The State said that Mr. Jackson also had a non-extraditable warrant in the state of New Mexico.

¶ 13    Defense counsel asked the court to place Mr. Jackson on electronic monitoring, arguing that it was "the least restrictive way to ensure his appearance in court" and to ensure that there was no contact between him and any of the complaining witnesses. She noted that Mr. Jackson was 58 years old and a lifelong resident of Chicago who had held steady work doing home care and working various warehouse jobs. If granted pretrial release, he would be able to stay with his fiancée in Chicago. Counsel argued that these were not violent charges and pointed out that there were issues with C.C.'s credibility because her story had changed. Counsel noted that Mr. Jackson had "had a friendly relationship with at least one of these complaining witnesses up to and including right before his arrest" and that the arrest in fact came as a surprise to him.

¶ 14    Noting that what the State had proffered were only allegations and that it was "merely going forward on a hearing for detention," the court concluded that the proof was evident and the presumption great that Mr. Jackson committed the alleged offenses, making him eligible for pretrial detention.

¶ 15    The court further concluded, based on the nature of the offenses, the fact that there were three separate complaining witnesses and potentially three more, and the fact that the charges all

involved children, that Mr. Jackson posed a real and present threat to the safety of any person or persons in the community.

¶ 16    The court also concluded that Mr. Jackson was a flight risk, based on his failures to appear in 2012 and 2022, and the outstanding warrant for his arrest in New Mexico, which indicated that he might have ties to that state. The court acknowledged that Mr. Jackson maintained that he was late to court in 2022 but did not fail to appear on that date and that he claimed to have never been to New Mexico, but said that those were nevertheless a part of his criminal record. The State noted at this point that Mr. Jackson had also failed to appear in 2009, 2002, 2000, 1999, and 1987, and the court agreed that this was "even more proof" of a pattern of failing to appear.

¶ 17    The court considered defense counsel's request that Mr. Jackson be released on electronic monitoring but concluded that that was not a condition that would mitigate either the dangerousness or the risk of flight associated with Mr. Jackson's pretrial release.

¶ 18    The court entered pretrial detention orders consistent with these findings that called for Mr. Jackosn to be remanded to the custody of the Cook County sheriff pending trial.

¶ 19                                    II. JURISDICTION

¶ 20    The circuit court entered its order granting the State's petitions for pretrial detention on September 25, 2023, and Mr. Jackson filed a timely notice of appeal from that order on October 5, 2023. We have jurisdiction over this appeal under section 110-6.1(j) of the Code (725 ILCS 5/110-6.1(j) (West 2022)) and Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023), governing appeals from orders denying the pretrial release of a criminal defendant.

¶ 21                                    III. ANALYSIS

¶ 22    Section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2022)) provides that "[a]ll defendants shall be presumed eligible for pretrial release." The State must seek pretrial detention

by filing a timely, verified petition. *Id.* § 110-6.1(a), (c). To obtain that relief, the State must prove by clear and convincing evidence that (1) "the proof is evident or the presumption great" that the defendant committed a qualifying offense and where, as here, the defendant has been charged with a sex offense under Article 11 of the Criminal Code of 2012, that (2) the defendant "poses a real and present threat to the safety of any person or persons or the community" (the dangerousness standard) and (3) "no condition or combination of conditions" set forth in section 110-6.1(b) of the Code can mitigate either that safety risk or "the defendant's willful flight." *Id.* § 110-6.1(e)(1)-(3).

¶ 23    The statute makes clear that "[t]he rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." *Id.* § 110-6.1(f)(5). Rather, either side "may present evidence *** by way of proffer based upon reliable evidence." *Id.* § 110-6.1(f)(2). The court's ultimate decisions "regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." *Id.* § 110-6.1(f)(7).

¶ 24    Section 110-6.1 of the Code does not establish a standard of review for orders granting, denying, or setting conditions of pretrial release. We typically afford great deference to the circuit court's factual findings, however, and will reverse them only if they are against the manifest weight of the evidence. *People v. Hackett*, 2012 IL 111781, ¶ 18. This is the standard we now apply to the court's findings of dangerousness and risk of willful flight. As to the court's decision regarding whether there are any conditions of release that could mitigate those risks, we believe an abuse of discretion standard is most appropriate. Courts are "endowed with considerable discretion" where, as here, they are called upon to weigh and balance a multitude of factors and arrive at a decision that promotes not only "principles of fundamental fairness" but "sensible and effective judicial

6

administration." *Czarnecki v. Uno-Ven Co.*, 339 Ill. App. 3d 504, 508 (2003) (noting that this is the standard of review when a court rules on a *forum non conveniens* motion). Abuse of discretion is also the standard we have historically used to review bail appeals under Rule 604(c)(1). *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10. "An abuse of discretion occurs when the circuit court's decision is 'arbitrary, fanciful or unreasonable,' or where 'no reasonable person would agree with the position adopted by the [circuit] court.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 25    Here, Mr. Jackson elected to stand on his notice of appeal rather than file a memorandum in support of his arguments, as he was permitted to do under Rule 604(h)(2) (eff. Oct. 19, 2023). He does not challenge the circuit court's determination that he was charged with an offense qualifying him for pretrial detention or its finding that the State met its burden of proof on the dangerousness standard. Mr. Jackson asserts, as he did at the pretrial detention hearing, (1) "that the 2022 DuPage warrant was only for being late to court," and (2) "that the New Mexico warrant cannot possibly be him because he has never been in the state of New Mexico." We construe these as challenges to the circuit court's finding that Mr. Jackson was a flight risk and review them under a manifest weight standard. But Mr. Jackson has not contended, in the circuit court or now on appeal, that he did not fail to appear on the other occasions reported by the State: in 2012, 2009, 2002, 2000, 1999, and 1987. Based on this record, we simply cannot conclude that the circuit court's finding that Mr. Jackson had a "record [of] absconding from the court" was against the manifest weight of the evidence. And even if it were, the circuit court separately found that Mr. Jackson met the dangerousness standard in section 110-6.1, a finding Mr. Jackson does not challenge. It is enough to detain a defendant if the court finds that no conditions of release could mitigate *either* the safety risk or the defendant's willful flight. *Id.* § 110-6.1(e)(1)-(3).

7

¶ 26    Nor has Mr. Jackson convinced us that the circuit court abused its discretion in denying him release with electronic monitoring. Mr. Jackson has not explained, in the circuit court or now on appeal, how or why electronic monitoring would mitigate his dangerousness or risk of flight. Given the nature of the charged offenses, which all occurred in the home and involved minors, we are unable to conclude that the circuit court's rejection of this alternative to pretrial detention was an abuse of discretion.

¶ 27                                    VI. CONCLUSION

¶ 28    For the above reasons, we affirm the circuit court's orders granting the State's petitions for pretrial detention.

¶ 29    Affirmed.