2024 IL App (1st) 231880-U

No. 1-23-1880B

Order filed January 3, 2024

FIFTH DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 DV 0713801 |
| | ) | |
| ANTOINE KEYS, | ) | Honorable |
| | ) | Callie Lynn Baird, |
| Defendant-Appellant. | ) | Judge presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Lyle concurred in the judgment.

**ORDER**

*Held*: The trial court's order detaining defendant is affirmed where the State properly brought its petition for detention and the trial court's conclusion that no set of conditions could mitigate the real and present threat posed by defendant to a person or the community was not an abuse of discretion.

¶ 1    Defendant Antoine Keys appeals the trial court's September 26, 2023, order denying him pretrial release. This appeal raises two issues under the law commonly known as the SAFE-T Act or the Pretrial Fairness Act (Public Act 101-652 (eff. Sept. 18, 2023)): (1) Did the trial court err in entertaining the State's petition to detain Keys because the Act does not permit the State to file such a petition where a defendant obtained monetary bail before the effective date of the Act but

failed to post bond? (2) Did the trial court otherwise abuse its discretion in denying Keys pretrial release? For the following reasons, we conclude that the trial court did not err in considering the State's petition to detain. We further conclude that the trial court did not abuse its discretion in denying Keys pretrial release.

¶ 2    In August 2023, Antoine Keys was arrested and charged with three counts of domestic battery based on bodily harm (720 ILCS 5/12-3.2(a)(1)) and two counts of domestic battery based on physical harm (720 ILCS 5/12-3.2(a)(2)). The trial court set a $50,000 D-bond. In the interim, on September 18, 2023, the Pretrial Fairness Act went into effect. *Rowe v. Raoul*, 2023 IL 129248, ¶ 52. On September 26, 2023, the trial court held a status hearing on discovery and special conditions of bond. After inquiry from the trial court, the State filed a petition for pretrial detention. 725 ILCS 5/110-6.1 (West Supp. 2023). Keys objected that the petition was untimely and improper, but the trial court overruled his objections and held the detention hearing. The trial court ultimately granted the State's petition and ordered Keys to remain detained. Keys filed a timely notice of appeal. Ill. S. Ct. R. 604(h)(1)(iii) (eff. Sept. 18, 2023).

¶ 3    The Pretrial Fairness Act amended the Code of Criminal Procedure to restructure the approach to pretrial release for criminal defendants awaiting trial in Illinois. See 725 ILCS 5/110-1 *et seq.* (West Supp. 2023). The Act abolished the requirement for monetary bail (725 ILCS 5/110-1.5 (West Supp. 2023)) and created a process for determining when pretrial release is improper. 725 ILCS 5/110-5 (West Supp. 2023). As a general rule, courts presume "that a defendant is entitled to release on personal recognizance on the condition that the defendant attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release ***." 725 ILCS 5/110-2 (West Supp. 2023). However,

the Act grants the State the ability to file a verified petition for the denial of pretrial release under certain circumstances. 725 ILCS 5/110-6.1.

¶ 4                                                    1.

¶ 5     Keys argues the Act's provision for the denial of pretrial release (section 110-6.1) does not apply to him because he was a person "who remain[ed] in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security ***." 725 ILCS 5/110-7.5(b) (West Supp. 2023). Keys contends that the plain language of the statute does not authorize the State to petition to detain defendants who were previously ordered released on monetary bail before the effective date of the Act but remain detained because they failed to post bond. Keys further asserts that the State's petition was untimely because the State is limited to filing a petition either without notice "at the first appearance before a judge" or with notice "within the 21 calendar days *** after arrest and release of the defendant ***." 725 ILCS 5/110-6.1(c). The State contends that the Act expressly authorizes the State to file a petition to detain when the trial court holds a hearing to review the conditions of bond. 725 ILCS 5/110-7.5(a). These contentions depend on statutory interpretation subject to *de novo* review. *People v. Taylor*, 2023 IL 128316, ¶ 45.

¶ 6     The Act expressly addresses someone in Keys's position: subsection 110-7.5(b) of the Act provides that "any person who remains in pretrial detention after having been ordered released from pretrial conditions, including the condition of depositing security, *shall be entitled to a hearing* under subsection (e) of Section 110-5." (Emphasis added.) 725 ILCS 5/110-7.5(b). Key's counsel concedes that a conditions hearing was proper under the Act but contends that the Act does not permit the State to petition to detain a defendant at such a hearing (because such a petition

is not mentioned in "subsection (e) of Section 110-5"). 725 ILCS 5/110-5(e) (West Supp. 2023). However, that same section of the Act expressly disavows any limitation on the State's ability to petition to detain at this stage: "[t]his Section shall not limit the State's Attorney's ability to file a verified petition for detention under Section 110-6.1 ***." 725 ILCS 5/110-7.5(a). In reading these provisions of the Act together, and giving each provision meaning, the Act does not prevent the State from petitioning to detain at a conditions hearing held pursuant section 7.5(b). 725 ILCS 5/110-7.5(b).

¶ 7      In resolving this question, we do not write on a blank slate. As appellate decisions from bail determinations under the new Act proliferate, a consensus is building. Our conclusion that the Act does not prevent the State from petitioning to detain at a conditions hearing held pursuant to section 7.5(b) finds support in the emerging caselaw. *See, e.g., People v. Whitmore*, 2023 IL App (1st) 231807 (State may petition for denial of pretrial release of defendants who were ordered released on bond but still detained when the Act went into effect); *People v. Davidson*, 2023 IL App (2d) 230344, ¶ 18 ("Defendant made the decision to seek reconsideration of his pretrial release under the Act, whereby the court could *either* order his release with nonmonetary conditions *or*, upon the State's petition, deny his release altogether." (Emphasis in original.)); *People v. Downey*, 2023 IL App (4th) 230961-U, ¶ 17 (holding the State is authorized to file a petition for detention where defendant "elected to move for reconsideration of his conditions of release and the State responded by presenting its petition *** at defendant's first appearance before a judge after the Act's postponed effective date."); *People v. Wetzel-Connor*, 2023 IL App (2d) 230348-U, ¶ 27 ("[A defense] motion effectively triggered consideration of defendant's release conditions under the *amended* Act, and, under the amended Act, the State may also petition the court to deny

defendant's release altogether." (Emphasis in original.)); *People v. Rogers*, 2023 IL App (1st) 231808-U, ¶ 19 (holding that "the Code permits the State to file a responding petition *** where a defendant was arrested and detained prior to the Act's effective date, remained in detention after monetary bail was set, and filed a petition to remove pretrial conditions pursuant to the Act." (Internal quotation marks omitted.)).

¶ 8    The case law, however, is not entirely uniform. Two decisions from the Fifth District have held that that a timing requirement in the Act precludes consideration of a petition to detain under analogous circumstances. See *People v. Vingara*, 2023 IL App (5th) 230698; *People v. Rios*, 2023 IL App (5th) 230724. Those decisions rely on the provision in the Act that requires the State to file a petition to detain either without notice "at the first appearance before a judge" or with notice "within the 21 calendar days *** after arrest and release ***." 725 ILCS 5/110-6.1(c). We rejected this interpretation in *Whitmore* because such a construction would effectively preclude the State from filing a petition to detain in almost every case where a defendant remains detained having failed to post monetary bond. *Whitmore*, 2023 IL App (1st) 231807, ¶ 7; *accord People v. Kurzeja*, 2023 IL App (3d) 230434, ¶¶ 14-15 (concluding that the Act's timing requirement does not preclude consideration of a petition to detain); *People v. Jones,* 2023 IL App (4th) 230837, ¶ 17 (same). Indeed, such a reading would render superfluous the Act's provision that "[t]his Section shall not limit the State's Attorney's ability to file a verified petition for detention***." 725 ILCS 5/110-7.5(a).

¶ 9    Keys argues that the State's petition was also improper because it was not filed in response to a defense-initiated motion to reconsider bond and the petition seemed prompted by an inquiry from the trial court. Keys raised neither objection below, so both are forfeited. *People v. Hayes*,

319 Ill. App. 3d 810, 818-19 (2001). Defense counsel specifically argued that a conditions hearing was required because the defendant had failed to satisfy the conditions of his previously set monetary bail:

> "THE COURT: Yes, but you still have to have a hearing on the conditions of pretrial release.
>
> MS. THIRIOT [DEFENSE COUNSEL]: On the conditions, but not on detention.
>
> ***
>
> I don't believe that this re-opens detention *** I don't believe that because we have to have it, we have to do the detention hearing."

Forfeiture aside, the weight of authority provides that where the defendant argues that the trial court must reexamine continued detention under the Act for a defendant who has been unable to meet previously set monetary bail under the prior law, the State may petition for detention. See, e.g., *Whitmore*, 2023 IL App (1st) 231807, ¶ 7; *Davidson*, 2023 IL App (2d) 230344, ¶ 18; *Kurzeja*, 2023 IL App (3d) 230434, ¶ 15; *Jones,* 2023 IL App (4th) 230435, ¶ 17 ; *Downey*, 2023 IL App (4th) 230961-U, ¶ 17; *Wetzel-Connor*, 2023 IL App (2d) 230348-U, ¶ 27; *Rogers*, 2023 IL App (1st) 231808-U, ¶ 19; but see *Vingara*, 2023 IL App (5th) 230698; *Rios*, 2023 IL App (5th) 230724. Finally, there is nothing in the Act that precludes the trial court from inquiring as to what motions may be filed by the parties, and Keys cites to no authority for such a proposition. Accordingly, for all these reasons, the trial court did not error in considering the petition to detain.

¶ 10                                        2.

¶ 11     Keys next argues that the trial court abused its discretion in granting the State's motion to detain because it failed to show by clear and convincing evidence that Keys posed a "real and

present threat to the safety of any person" that "no condition or combination of conditions *** can mitigate ***." 725 ILCS 5/110-6.1(e)(2), (3). While a trial court's ultimate decision to detain or not is subject to review for an abuse of discretion, *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10 (citing *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9); *Whitmore*, 2023 IL App (1st) 231807, ¶ 18; see also *People v. Davis*, 2023 IL App (1st) 231856, a trial court's factual determinations are reviewed under the manifest weight standard, *People v. Jackson*, 2023 IL App (1st) 231817-U, ¶ 24; *People v. Rodriguez*, 2023 IL App (3d) 230450, ¶ 19 (Brennan, J., concurring). Both standards are highly deferential. A factual finding "is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or if the finding is unreasonable, arbitrary, or not based on the evidence presented." *Best v. Best*, 223 Ill. 2d 342, 350 (2006). A trial court abuses its discretion when its decision is "arbitrary, fanciful or unreasonable" or when "no reasonable person would agree with the position adopted by the trial court." (Internal quotation marks omitted.) *Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 12    Under the Act, "defendants shall be presumed eligible for pretrial release" and the burden is on the State to prove by clear and convincing evidence that the defendant should not be released. 725 ILCS 5/110-6.1(e). To meet this burden, the State must first show that the defendant committed a detainable offense. 725 ILCS 5/110-6.1(e)(1). Then, it must prove that "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case ***." *Id.* § 110-6.1(e)(2). If the State can satisfy these requirements, then it must demonstrate that "no condition or combination of conditions" could mitigate "(i) the real and present threat to the safety of any person or persons or the community" or "(ii) the defendant's willful flight." *Id.* § 110-6.1(e)(3).

¶ 13    There is no dispute that Keys is charged with detainable offenses. 725 ILCS 5/110-6.1(a)(4) (West Supp. 2023). The State sought to detain Keys because he posed "a real and present threat to the safety" of any person or the community. It proffered that during an altercation over a cell phone, Keys slammed his 70-year-old mother to the ground causing her bodily injuries, struck her with closed fists, kicked and pushed her, and cut her finger with a knife. Keys lived with his mother at the time. The State presented Key's criminal history consisting of two felony convictions (including a 2019 burglary where he was sentenced to 3 years IDOC), two misdemeanors (a 2019 assault and a domestic battery case where he received 18 months probation and 90 days in IDOC), and four prior domestic violence arrests. No prior offenses involved his mother. The State also introduced photographs corroborating the injuries to his mother.

¶ 14    In mitigation, Keys asserted that the cut on his mother's finger occurred when she came at him with a knife and he tried to get it out of her hands. He maintained that his mother had been abusive, and he was saving money to move out. He indicated that he could stay with a friend or his adult children if released. Keys requested GPS monitoring as a sufficient condition of release.

¶ 15    In granting the State's petition and deciding to detain Keys, the trial court addressed each factor required under the Act and explained how the evidence presented satisfied the requisite legal standards:

> "THE COURT: So I find that the State has proven by clear and convincing evidence that the proof is evident and the presumption is great that the defendant has committed the offense of domestic battery, which is a qualifying offense under the statute, Section 5/110-6.1, and that the defendant poses a real and present threat to the safety of any person or persons or the community, and based on the facts in this alleged case, and the prior history

of domestic battery arrests, and the age of the complainant and the injuries that she has suffered, I find that there are no conditions or combinations of conditions of pretrial release that can mitigate the real and present threat posed by the defendant, so the least restrictive condition is detention, and that these conditions are necessary to avoid any real present threat posed by the defendant. So I'm ordering that the defendant be detained."

Further, the trial court described the photos showing the extent of the injuries to Keys's 70-year-old mother:

"THE COURT: Okay. And in one picture there's a photograph depicting her middle finger bandaged. And then there's a photo of Ms. Keys. I can see her upper left thigh, and there's dark discoloration, second photo. And then there's an additional photo of Ms. Bernadene Keys, her right arm discoloration. And then her right knee, there's discoloration on the top of the knee. And then on the upper left arm there's red and discoloration."

In addition, the trial court recounted the specific circumstances of the alleged offense:

"THE COURT: *** [T]he complaining witness in this case is 70 years of age. I have reviewed photographs of her, and she is not a large or substantial woman.

The allegations are that she was slammed by the body, struck with closed fists, cut finger, and there are photographs depicting visible injuries to Ms. Keys.

So in considering the nature and circumstances of this alleged offense, that allegedly caused physical harm, and that physical harm did result in injuries to the complainant. The Pretrial Services report indicates a new criminal activity scale of 4 out of 6; and a failure to appear, 3 out of 6. The criminal history does involve incidents of domestic battery, and one conviction, and then four domestic battery arrests."

¶ 16    Based on this record, the trial court could, within its discretion, conclude as it did—that the State had met its burden to show by clearing and convincing evidence that Keys presented a real threat to the community that no conditions of pretrial release could mitigate. The defense argues that the trial court abused its discretion, because "Keys is a wholesome and productive member of society who has fostered healthy relationships with family members who are not abusive." But that was an alternative view presented below that the trial court was free to reject. An abuse of discretion only occurs where a trial judge acts "arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceed[s] the bounds of reason and ignore[s] recognized principles of law ***." *Zurich Insurance Co. v. Raymark Industries, Inc.*, 213 Ill. App. 3d 591, 595 (1991) (quoting *In re Marriage of Aud*, 142 Ill. App. 3d 320, 326 (1986)).

¶ 17    The Act requires the trial court to make individualized determinations on pretrial release. "Decisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110/6.1(f)(7). The ultimate decision to detain or not is entrusted to the trial court's discretion. *Whitmore*, 2023 IL App (1st) 231807, ¶ 24 (citing *Simmons*, 2019 IL App (1st) 191253, ¶ 9). From a reviewing court perspective, this means that it is possible that two trial judges, based on the same record, could come to opposite conclusions and yet both be affirmed:

> "If the judge could decide only one way he would not be able lawfully to exercise discretion; either he would be following a rule or the circumstances would be so one-sided that deciding the other way would be an abuse of discretion. If the judge can decide either way because he is within the zone in which he has discretion *** this implies that two judges faced with the identical record could come to opposite conclusions yet both be

affirmed." *United States v. Williams*, 81 F.3d 1434, 1437 (7th Cir. 1995) (Posner, J.). Indeed, it is not the role of the reviewing court to reweigh the evidence or to reverse a discretionary judgment call simply because a judge *could* reach a contrary conclusion. *Simmons v. Garces*, 198 Ill. 2d 541, 568 (2002) ("In determining whether there has been an abuse of discretion, we may not substitute our judgment for that of the trial court, or even determine whether the trial court exercised its discretion wisely.").

¶ 18    Keys argues that the State failed to meet its burden under the safety standard because the State "did not mention the safety standard" in the hearing. He contends that it was "improper" for the circuit court to conclude that the State met its burden "without first requiring to the State to articulate why the State believed Keys was a threat ***." Keys failed to raise this objection below so it is forfeited, *Hayes*, 319 Ill. App. 3d at 819, but on the merits, the argument amounts to an absurd formalism. The obligation of the State is to present evidence from which the trial court can find that the standard was satisfied by clear and convincing proof. The State's petition expressly sought to detain Keys as a safety threat because of current domestic violence charges and Keys's prior domestic battery conviction. At the hearing, the State made a detailed proffer that further informed the trial court's decision.

¶ 19    Similarly, Keys argues that the trial court abused its discretion in considering Keys's Pretrial Services report, because neither the State nor defense introduced the report into evidence. Again, Keys failed to raise this objection below, and it is forfeited. *Id.* But on the merits, the argument fails. The Act itself contemplates trial courts using a risk-assessment tool in making bail determinations:

"The Supreme Court may establish a statewide risk-assessment tool to be used in

> proceedings to assist the court in establishing conditions of pretrial release for a defendant by assessing the defendant's likelihood of appearing at future court proceedings or determining if the defendant poses a real and present threat to the physical safety of any person or persons." 725 ILCS 5/110-6.4 (West Supp. 2023).

The Act expressly authorizes the trial court to use a "regularly validated risk assessment tool" and provides that defendant's counsel "shall be provided with the information and scoring system of the risk assessment tool." 725 ILCS 5/110-5(b). Further, the Act provides that prior to the hearing on the petition to detain, the State "shall tender" to the defendant copies of defendant's criminal history and any available police reports. 725 ILCS 5/110-6.1(f)(1), (4). The rules of evidence "do not apply to the presentation and consideration of information at the hearing." 725 ILCS 5/110-6.1(f)(5). The General Assembly also enacted the Pretrial Services Act, creating a pretrial services agency to provide background information regarding the pretrial release of individuals charged with crimes. 725 ILCS 185/1 *et seq.* (West 2022). That Act mandates that the pretrial services agency prepare a written report to be provided to the parties and the trial judge. 725 ILCS 185/17, 21 (West 2022). There is no suggestion that the trial court relied on information that was not already made available to the defense. To credit Keys's argument would undermine the truth-seeking function of the court and would impose upon the trial court formal evidentiary requirements specifically excused in the Act. *Id.* Against this backdrop, the trial court did not abuse its discretion in considering the Pretrial Services report.

¶ 20    For all these reasons, the September 26, 2023, order of the circuit court of Cook County is affirmed.

¶ 21    Affirmed.