2024 IL App (1st) 232149-U

No. 1-23-2149B

Order filed January 24, 2024

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21-CR-264 |
| | ) | |
| LUZBEL VICTOR QUIROZ, | ) | Honorable |
| | ) | Domenica A. Stephenson, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Navarro concur in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's pretrial detention order was not against the manifest weight of the evidence where the State had shown by clear and convincing evidence that defendant had committed a detainable offense and was a threat to the community; however, the circuit court failed to make a written finding on whether any set of conditions of pretrial release could mitigate the real and present threat posed by defendant.

¶ 2    Defendant Luzbel Victor Quiroz appeals the circuit court's October 30, 2023 order denying him pretrial release. This case presents two issues on appeal. First, Quiroz challenges the circuit court's finding that the State had shown by clear and convincing evidence that Quiroz had committed first-degree murder and posed a real and present threat to a person or the community. Second, Quiroz contends that the circuit court failed to consider whether any set of conditions of

pretrial release could mitigate the real and present threat posed by Quiroz. For the following reasons, we affirm the circuit court's finding that the State had shown by clear and convincing evidence that "the proof is evident or the presumption great that the defendant" committed a detainable offense and posed a real and present threat to a person or the community. However, we reverse and remand for the circuit court to make a written finding on whether there was a less restrictive alternative to denial of pretrial release.

¶ 3    Quiroz surrendered to the Chicago Police Department on November 23, 2020. He was subsequently charged with six counts of first-degree murder. 720 ILCS 5/9-1 (West 2020). Quiroz has remained in custody since his arrest. Quiroz initially appeared for a bond hearing on November 25, 2020, where the State sought mandatory no bail. The bond court granted the State's petition. Over the next three years, Quiroz sought reconsideration by the circuit court and review in this court multiple times, but his motions were consistently denied. Then, on September 18, 2023, Public Act 101-652 (eff. Sept. 18, 2023), commonly known as the SAFE-T Act or the Pretrial Fairness Act, went into effect. *Rowe v. Raoul*, 2023 IL 129248, ¶ 52. On October 13, 2023, Quiroz moved for review under the newly amended Code of Criminal Procedure. The circuit court denied Quiroz's motion and held that defendant would remain detained pretrial. This timely appeal followed. Ill. S. Ct. R. 604(h)(1)(iii) (eff. Oct. 19, 2023).

¶ 4    Under the amended Code, courts presume "that a defendant is entitled to release on personal recognizance on the condition that the defendant attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release ***." 725 ILCS 5/110-2 (West Supp. 2023). The Code places the burden on the state to overcome this presumption by providing clear and convincing evidence that the defendant should

not be released. 725 ILCS 5/110-6.1(e). To meet this burden, the State must first show that the defendant committed a detainable offense. *Id.* § 5/110-6.1(e)(1). Then, it must prove that "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case ***." *Id.* § 5/110-6.1(e)(2). If the State can satisfy these requirements, then it must demonstrate that "no condition or combination of conditions" could mitigate "the real and present threat to the safety of any person or persons or the community." *Id.* § 5/110-6.1(e)(3). The circuit court's factual determinations regarding whether the State has met this burden are reviewed under the manifest weight of the evidence standard. See *People v. Jackson*, 2023 IL App (1st) 231817-U, ¶ 24; *People v. Keys*, 2024 IL App (1st) 231880-U, ¶ 11; *People v. Rodriguez*, 2023 IL App (3d) 230450, ¶ 19 (Brennan, J., concurring). The trial court's determination that a defendant is or is not entitled to pretrial release is reviewed for abuse of discretion. *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18.

¶ 5     Here, the circuit court concluded that Quiroz should be detained based on the State's proffer. The undisputed facts are as follows. Early on the morning of November 5, 2020, Quiroz's mother, Alma Chavez, appeared on her neighbor's doorstep asking the neighbor to call the police. The neighbor indicated that she had been awakened by five or six gunshots. After the gunshots, she heard someone running down the backstairs of the unit. She then called the police and waited outside Chavez's apartment for them to arrive. At this time, the neighbor saw the victim lying in Chavez's bed covered in blood. A second neighbor also heard the gunshots but never saw anyone and never left her apartment.

¶ 6     When the police arrived, they recovered 17 spent shell casings from Chavez's bedroom and the adjoining hallway. The medical examiner determined that the victim died as a result of

multiple gunshot wounds. Ballistics testing later confirmed that the bullets were all fired from the same gun. Chavez indicated that she had seen Quiroz post a picture on the social media app Snapchat where he was in possession of a firearm.

¶ 7     The rest of the State's proffer was based on Chavez's ultimate statement to the State's Attorney. In it, she stated that, late in the evening on November 4, 2020, she had gone out to a bar with the victim. She said that Quiroz contacted her while she was out to tell her that the back door of their home was broken. Chavez dismissed these concerns and said that she would worry about the door later. She stated that she and the victim returned to her home at around one o'clock the following morning and began drinking beer in the kitchen to celebrate the victim's birthday. At that time, there was no one else in the home.

¶ 8     According to Chavez, Quiroz later returned home and began to talk to her and the victim about the broken back door. She said that the victim did not believe Quiroz about the door and that Quiroz and the victim began to argue. Chavez then claimed that Quiroz eventually stormed off to his room, and she went to the restroom where she passed out. She asserted that she was awakened later by loud bangs and the victim yelling for help. She stated that she got up and went to the bedroom to find the victim lying face-up in bed with blood all over him; upon seeing this scene, she screamed. She finally alleged that, at that moment, Quiroz walked down the hallway, passed by her, and told her that he loved her and that he was sorry before he ran out of the back door of the home.

¶ 9     Quiroz argued in response that Chavez's narrative was rife with contradictions. Over the course of her statements to the police, Chavez changed her story multiple times regarding her relationship to the victim, her location during the killing, her son's location during the killing, and

her knowledge and understanding of who had murdered the victim. Prior to giving its proffer, the State admitted that Chavez had "provided some inconsistent statements," but that these inconsistencies were "understandable considering [she was] the defendant's mother." Quiroz further argued that any statement that Chavez made was inherently unreliable because she was heavily intoxicated both when she gave her statements to the police and when the victim was murdered. Additionally, Quiroz noted that the State has no corroborating evidence that places him at the scene of murder, and he offered his own alibi witness who would testify that Quiroz was about an hour away from the home at approximately the time that the murder occurred. Quiroz also noted that Chavez's hands were tested for gunshot residue in the aftermath of the incident and the test came back positive.

¶ 10    We afford trial courts tremendous leeway in exercising their discretion in the arena of pretrial release. See *Whitmore*, 2023 IL App (1st) 231807, ¶ 24. Our role is not to reweigh the evidence presented below; we seek only to determine whether a trial judge has acted "arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted." *Zurich Insurance Co. v. Raymark Industries, Inc.*, 213 Ill. App. 3d 591, 595 (1991) (quoting *In re Marriage of Aud*, 142 Ill. App. 3d 320, 326 (1986)). It may be the case that the State's evidence here will prove unpersuasive at trial and Quiroz will be acquitted. But the fact that Quiroz has a defense, even a strong defense, does not necessarily negate the State's showing. See *People v. Reed*, 2023 IL App (1st) 231834, ¶ 25. The circuit court credited the State's evidence over the competing defense narrative, and accordingly concluded that "the proof is evident or the presumption great that the defendant" (725 ILCS 5/110-6.1(e)(1)) committed the detainable

offense of first-degree murder. The circuit court's finding is not unreasonable, arbitrary or not based in evidence such that we could conclude that it is against the manifest weight of the evidence. *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 11    However, the State concedes that it presented no evidence or argument to the circuit court regarding whether any conditions of pretrial release could mitigate the threat that Quiroz poses and that the trial court never made a written finding on this issue. Accordingly, the State requests that the case be remanded to the circuit court for further proceedings. The Code requires the circuit court to "make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, *including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community \*\*\**." (Emphasis added.) 725 ILCS 5/110-6.1(h)(1). A trial court's failure to make such a finding is an error that requires remand. *People v. Stock*, 2023 IL App (1st) 231753, ¶¶ 19-22. Therefore, we remand the case for the purpose of determining whether conditions of pretrial release may be imposed that could mitigate the threat that Quiroz poses to the community. We express no opinion as to what conditions should be imposed nor whether any such conditions exist.

---

¶ 12    The October 30, 2023 order of the circuit court of Cook County is affirmed in part and reversed in part. The case is remanded for the trial court to make a determination regarding whether available conditions of release would be able to mitigate Quiroz's potential threat to the community.

¶ 13    Affirmed in part and reversed in part.