2024 IL App (1st) 232364-U

SECOND DIVISION
February 27, 2024

No. 1-23-2364B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 0534401 |
| | ) | |
| JOSE RIVAS, | ) | Honorable |
| | ) | Margaret Ogarek, |
| Defendant-Appellant. | ) | Judge Presiding. |

---

JUSTICE McBRIDE delivered the judgment of the court.
Justices Ellis and Cobbs concurred in the judgment.

**ORDER**

¶ 1   *Held:*   Trial court's order for pretrial detention reversed where the trial court failed to make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release. Remanded for further proceedings and entry of a written order that complies with the Act.

¶ 2   Defendant, Jose Rivas, appeals the trial court's granting of the State's verified petition for pretrial detention pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)).

¶ 3     The record shows that defendant was charged with two counts of home invasion, and criminal damage to property.

¶ 4     On April 16, 2023, the State filed a petition for a hearing to deny bail to defendant pursuant to the then-in effect version of 725 ILCS 5/110-6.1 (West 2022). Following a hearing on the State's motion, the trial court entered an order to hold defendant without bond.

¶ 5     The parties also appeared in court on June 1, 2023. The record indicates that defense counsel made a motion to review defendant's bond, which the trial court granted. The trial court denied defendant's motion to set bond, ordering the prior no bond order "to stand."

¶ 6     The parties appeared before the court again on September 14, 2023. Defense counsel requested another bond hearing, which the court set for November 29, 2023.

¶ 7     On November 29, 2023, the date of the bond hearing, the State filed a verified petition for pretrial detention hearing pursuant to the newly enacted Pretrial Fairness Act. The State asserted that defendant was charged with the detainable offense of home invasion, and that the proof was evident or presumption great that he committed that offense.  The State also asserted that defendant poses a real and present threat to the safety of any person or persons or the community, that he had a high likelihood of willful flight to avoid prosecution, and that no condition or combination of conditions could mitigate that risk.

¶ 8     In support, the State set out that on April 15, 2023, three victims—Martinez, Gelacio, and Lopez—were at Martinez's residence when they heard banging on the door. Lopez answered the door, and defendant, along with two codefendants—Castillo and Solorzano—forcibly entered the home. Castillo struck Gelacio about her body and Solorzano punched Gelacio in her face with a closed fist. Lopez was then able to force defendant and Solorzano out of the house. Defendant and

Solorzano proceeded to throw bricks at the residence, break down the front door, and reenter. The three defendants then fled the scene.

¶ 9    At the hearing, the court allowed defendant's counsel to speak first. Counsel stated that the discovery showed that "there was a relationship between" one of the codefendants, one of the victims, and "a young child [who] was in the car." Defendant maintained that he was unaware of the "domestic situation," and "the reason that they were going to the residence." Counsel also stated that the defense "believe[d] the facts will show that [defendant] remained in the vehicle while all of the altercation occurred."

¶ 10    Defense counsel further stated that defendant was 31 years old, and has "three children ages 10, 4, and 2." Defendant "supports himself by working construction in the summer as well as landscaping." Defendant "completed the 11th grade in high school" and was "a resident of Cook County for his entire life." Defense counsel asked that the court enter an order for "house arrest."

¶ 11    The State then proceeded by the following factual proffer:

"one of the Victims in this case was in a dating relationship with Defendant Castillo. They have children in common.

On April 15th of 2023 at about 6:30 in the morning, all three Victims were at Victim Martinez's residence when they heard a banging at the door. Victim Lopez answered the front door and Defendant Castillo was standing there along with codefendants Rivas and Solorzano. A verbal altercation ensued between the Victim and Defendant Castillo. The Victim then shut the door in the Defendants' faces. Evidently Victim Lopez thought that the Defendants were there to drop off the children that they have in common so the Victim put on shoes and told the other Victims that they were going to get the children from [Castillo's] vehicle.

3

Victim Lopez then opened the door and Defendant Castillo ran into the room and lunged at \*\*\* Gelacio \*\*\*. Defendant Castillo began grabbing [Gelacio's] hair and scratching her face. This caused [Gelacio] to fall backwards. Defendant Castillo then got on top of her. [Gelacio] tried to fight Defendant Castillo off of her at which point Defendant Castillo began punching \*\*\* Gelacio in the chest and arms with a closed fist.

The other two Defendants Rivas and Solorzano entered the house at this point and began advancing toward Victim Lopez. Defendant Solorzano went toward Victim Gelacio and punched her in the face with a closed fist. Defendant Rivas began swinging at Victim Lopez who backed up into the kitchen and grabbed a knife in self-defense. Victim Lopez began waving the knife at Defendants Rivas and Solorzano until they backed up out of the house at which point Victim Lopez closed and locked the door and called for the other Victims to call the police.

At this point Defendant Castillo is still in the residence fighting with Victim Gelacio. After Defendants Rivas and Solorzano were out of the residence, they began throwing bricks through the house's windows and were kicking the front door. They eventually managed to kick the door down. And then they reentered the residence. Victim Lopez again was using a knife in self-defense to defend herself and the other Victims.

At that point Defendant Castillo ran out of the residence and Defendants Rivas and Solorzano followed. One of the Victims then threw a brick towards the Defendants as they were running at which point Defendant Solorzano also grabbed a brick and threw it back at the Victims striking the residence, not the Victim, with

4

a brick. Defendant Rivas got into the driver's seat of the vehicle. All three Defendants left the scene. Officers were given a description of the vehicle. Minutes later officers stopped [Castillo's] vehicle a few blocks away from the incident location.

All three Defendants were detained and positively identified in a showup with the Victims. Victim Lopez suffered scratches to his chest and arms. Victim Gelacio suffered pain and tenderness inside of her head, swelling and bruising to her left eye, and scratches and bruising to her chest and arms. Victim Lopez and Defendant Castillo's 6-year-old son was asleep in Defendant Castillo's car throughout this entire incident including the traffic stop conducted by police."

¶ 12    The State then explained that defendant had a 2016 Class 4 felony DUI, for which he received 30 months' probation, which was "[t]erminated unsatisfactory." Defendant also had a 2018 "6303" conviction for driving while his drivers' license was suspended or revoked, which was a "misdemeanor reduced from a felony." Defendant was sentenced to "17 days' time considered served." Defendant's background also included "seven prior bond forfeitures."

¶ 13    In ruling, the court noted that it was taking into consideration the defense's arguments that defendant was a lifetime resident of Cook County, that he has "ties to the community including his three kids," that he had a job doing construction work, and that there "may indeed be a defense of a lack of intent to participate in what the State has described." The court explained, however, that it had to consider "the nature and circumstances" of the offense, and that the "allegations here are extremely violent." The court explained:

"The allegations by the State involve this Defendant along with two other individuals going to the home of another person which is exactly where people

should feel most secure. And when they do not gain invited entry according to the State's proffer, they demanded by throwing bricks through the window and kicking in the front door at which point they attack the inhabitants of that residence.

This is in the vicinity of a 6-year-old minor child. I can't think of anything that [is] much more a danger to the community other than the actions that [are] alleged to have occurred in this case. The Defendants were apprehended within a short period of time according to the State's proffer and identified by the victims in this case. There is a relationship between at least one of victims and one of the codefendants in this case involving minor children which circumstantially corroborates the connection of this Defendant to the crime itself.

After taking into consideration in addition the Victims condition the State described them as suffering not only scratches to the one but bruising, swelling. It sounds like [Gelacio] received quite a beating in the interior of that home.

I'm taking into consideration the history and characteristics of the Defendant including his prior criminal history. In this case the State proffered that he had a prior DUI probation that was terminated unsatisfactory. As well as a prior felony 6303 that was reduced down to a misdemeanor. He has 7 prior bond forfeitures which would leave this Court with the question of whether or not the Defendant is willing or able to return to court when ordered to do so.

The identity in this case has been established by the State's proffer through the positive identification of a showup. I do find that continued detention is necessary to avoid a real and present threat to the safety of the listed Victims in this case in addition to the community. It was established that the Defendants drove

6

away in a vehicle with a 6-year-old minor sleeping child. So I do have some concerns for that child as well based on the proffer the State read before me.

As it relates to this case, Mr. Rivas, I am denying your motion to be released on pretrial release at this time. I find that the allegations before this Court are such that you in my opinion pose a danger to the community and that the Court's findings at that original hearing in April of 2023 were appropriate."

¶ 14 The court entered a written order that same day. Regarding its decision regarding pretrial detention, the entire text of the written order reads, "Release w/ conditions DENIED."

¶ 15 Defendant filed a timely notice of appeal from the trial court's order, seeking "[p]retrial release from detention." Utilizing the form approved for Rule 604(h) appeals by defendants, defendant's claim of error consisted of four checked boxes.

¶ 16 First, defendant checked the box contending that the "State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense(s) charged." Defendant asserted that he "did not enter the residence" and that the "animosity between" his codefendant and one of the victims, as "parents of the minor child " was "the reason [defendant] has been arrested and detained."

¶ 17 Second, defendant checked the box titled, the "State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case." Defendant asserted that the "violence alleged is specifically limited to the individuals in this case." He asserted that he and the "complaining witness are strangers to each other"; that the "facts which led to these charges are distinctive and unlikely to reoccur"; and that he "does not have a history of violence."

¶ 18    Third, defendant checked the box labeled: "[t]he State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight." In the blanks below, defendant stated that he "does not present a threat to any individuals or the community as a whole" and that any "perceived threat" could "be mitigated with the condition of Ele[c]tronic Home Monitoring." Defendant acknowledged that there were bond forfeitures in his criminal history, but asserted that there was "no evidence of willful flight."

¶ 19    Finally, defendant checked the box indicating that the "court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent the defendant from being charged with a subsequent felony or Class A misdemeanor." In the space below, defendant expanded that electronic home monitoring would be "sufficient to ensure [defendant]'s future appearances in court and mitigate against possible future crimes, no matter how remote the possibility."

¶ 20    The appeal is brought pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of Act as September 18, 2023). This court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023).

¶ 21    The Act amended the Code by abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a)

(West 2022). For qualifying offenses, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence (1) that the proof is evident or the presumption great that the defendant has committed a qualifying offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), (2) that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2022)) or a likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2022)), and (3) that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (725 ILCS 5/110-6.1(e)(3) (West 2022)).

¶ 22    Illinois Supreme Court Rule 604(h), provides that appeals may be taken from orders granting or denying pretrial release, and the "Notice of Appeal shall describe the relief requested and the grounds for the relief requested." The Rule further provides that the "appellant may file, but is not required to file, a memorandum not exceeding 4500 words, within 21 days of filing of the Rule 328 supporting record." Ill. Sup. Ct. R. 604(h)(2). The appellee may then file its own responsive memorandum within 21 days thereafter. *Id.*

¶ 23    In defendant's Rule 604(h) memorandum, counsel contends that "the notice of appeal adequately communicates the defendant-appellant's contentions of error and identifies the portion of the record relevant to the resolution of the appeal" as to the first and second issues. Accordingly, defendant's memorandum addresses only the third and fourth issues identified in the notice of appeal—regarding whether the court adequately considered alternative conditions to detention. Specifically, defendant contends that the court "did not mention any condition or combination of conditions of release, especially electronic monitoring or house arrest, and did not explain that no

9

condition or combination of conditions would mitigate the real and present threat of safety to the public."

¶ 24    In its responsive memorandum, the State concedes error. The State explains that the trial court's written order does not comply with 725 ILCS 5/110-6.1(h)(1), which provides that the "court shall, in any order for detention, *** make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(h)(1).

¶ 25    Although the trial court made substantial findings on the record during the hearing, we agree that the written order entered by the trial court was insufficient to comply with the statute. As stated above, the full text of the written order as to pretrial detention read, "Release w/ conditions DENIED." The trial court's failure to make written findings "summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid" a safety risk or prevent willful flight (*id.*), is an error that requires remand (*People v. Quiroz*, 2024 IL App (1st) 232149-U, ¶ 11 (citing *People v. Stock*, 2023 IL App (1st) 231753, ¶¶ 19-22); see also *People v. Peralta*, 2023 IL App (1st) 231897-U, ¶ 13). Since the trial court's order does not comply with section 110-6.1(h)(1), we remand this matter for further proceedings and for entry of a written order in compliance with the statute.

¶ 26    We note, however, that defendant requests that this court reverse the detention order "and remand with directions to place [him] on electronic monitoring." This, we will not do. We remand this cause to the trial court for it to resolve whether electronic monitoring, or any other condition or combination of conditions, could mitigate the real and present safety threat or risk of willful

flight, and if not, for the court to explain why in a written order consistent with the statute. See, *e.g.*, *People v. Herrera*, 2023 IL App (1st) 231801, ¶¶ 36, 37; see *Peralta*, 2023 IL App (1st) 231897-U, ¶ 13. We express no opinion as to what conditions should be imposed nor whether any such conditions exist.

¶ 27    For the foregoing reasons, we reverse the November 29, 2023, order of the circuit court of Cook County, and remand for further consideration of pretrial detention alternatives and entry of a written order that complies with the Act. In the interim, defendant shall remain detained subject to previous bond and other conditions. Mandate shall issue *instanter*.

¶ 28    Reversed and remanded.