NOTICE
Decision filed 03/07/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 231366-U

NO. 5-23-1366

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Coles County. |
| | ) | |
| v. | ) | No. 23-CF-657 |
| | ) | |
| ALEX CRISMAN, | ) | Honorable |
| | ) | Brian L. Bower, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Welch and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's order granting the State's petition to deny pretrial release is affirmed where the trial court's findings were not against the manifest weight of the evidence, the order denying pretrial release was not an abuse of discretion, defense counsel failed to object to the State's proffer, and no request for plain-error review was presented on appeal.

¶ 2                                    I. BACKGROUND

¶ 3    Defendant appeals the trial court's order denying him pretrial release pursuant to Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act (Act). See Pub. Acts 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1,

1

2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we affirm the trial court's order.[1]

¶ 4    On December 21, 2023, defendant was charged by information with five counts of unlawful possession of a weapon by a felon, in violation of section 24-1.1(a) of the Criminal Code of 2012 (720 ILCS 5/24-1.1(a) (West 2022)), a Class X felony. The charges involved defendant's alleged possession of a Daniel Defense .223 AR-15, an unserialized AR-10 rifle, a C.A.I. bolt-action rifle, an unserialized full-framed 9-millimeter pistol, and an unserialized compact 9-millimeter pistol, on September 17, 2023. At the time of the possession of those weapons, it was also alleged that defendant possessed body armor, which required a minimum term of imprisonment of 10 years with a maximum term of 40 years, rendering the charges nonprobational offenses pursuant to section 5-5-3(c)(2)(F-5) of the Unified Code of Corrections (730 ILCS 5/5-5-3(c)(2)(F-5) (West 2022)). The prior felony was listed as Coles County case No. 17-CF-353. On the same day the charges were filed, a warrant for defendant's arrest was issued and the State filed a petition to deny pretrial release. The petition alleged that defendant was charged with qualifying offenses and his release would pose a real and present threat to the safety of person(s) in the community because:

> "Defendant has committed acts of violence with a firearm, including shooting himself in the head. When the Defendant was recovered, he was found in possession of multiple firearms, including home-built an[d] un-serialized assault rifle and two home-built un-serialized pistols. The Defendant had several rounds of ammunition and tactical body

---

[1]Pursuant to Illinois Supreme Court Rule 604(h)(5) (eff. Dec. 7, 2023), our decision in this case was due on or before March 6, 2024, absent a finding of good cause for extending the deadline. Based on the high volume of appeals under the Act currently under the court's consideration, as well as the complexity of issues and the lack of precedential authority, we find there to be good cause for extending the deadline.

armor, complete with multiple loaded assault weapon magazines and a trauma medical kit. The Defendant later expressed that he knowingly pursued the acquisition of firearms despite his status as a felon after recovering from his self-inflicted wounds."

Defendant was arrested on December 21, 2023.

¶ 5   The pretrial services investigation report revealed that defendant was 29 years of age, a lifelong resident of Coles County, and lived with his mother. Defendant indicated that he had ample familial support in the area and reliable means of transportation that would allow him to attend future court dates. Defendant had experience as a licensed EMT and became unemployed in July 2023. He advised of two prior DUI convictions and indicated a willingness to seek substance abuse treatment. He stated that he had no history of a mental health diagnosis prior to his mental health crisis in September 2023. He was provided a psychiatry services referral for medication management and mental health treatment that was pending until the initial psychiatric appointment. He also had a pending referral for psychotherapy. Defendant reported current issues or concerns regarding his overall physical health condition were associated with his mental health crisis. He indicated that a hole remained in his mouth as a result of a self-inflicted gunshot wound that required continued medical care. He had an oral surgeon consultation scheduled for December 28, 2023, to address further corrective surgery. He also indicated that he experienced back/spine issues as a result of the gunshot wound and vision impairment in his right eye. The defendant scored a 3 out of 14 on Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R), which classified him as a level 2 (out of 6) risk of recidivism. Defendant's criminal history included driving under the influence in 2015, leaving the scene of an accident in 2016, driving under the influence in 2017, possession of a firearm with a revoked FOID card in 2017, and driving on a revoked license in 2018.

¶ 6 On December 22, 2023, a hearing was held on the State's petition to deny pretrial release. Counsel was appointed to represent defendant. Defense counsel confirmed he had a copy of the State's petition and advised the court he was ready to proceed.

¶ 7 The State proffered that on September 17, 2023, officers from the Mattoon Police Department responded to a home in Mattoon for an attempted suicide. Defendant's girlfriend reported that defendant shot himself. She stated that he was intoxicated and urinated on the floor. When she confronted him about cleaning it up, he said, "you know what," pulled out a pistol, chambered a round, and shot himself in the chin. Defendant's girlfriend called for help and defendant got up and continued to move around the home.

¶ 8 After ensuring that defendant was provided medical care, a consent search of the home revealed a homemade unserialized AR-10 rifle. The State explained that this weapon was similar to an AR-15 but shot a larger caliber round. The State proffered that officers also found a .223 AR-15, a C.A.I. 7.62 rifle with a loaded 50-round drum, two homemade and unserialized 9-millimeter pistols, three ammunition boxes containing assorted pistol and rifle magazines, 362 rounds of .223-caliber ammunition, 48 rounds of 308-caliber ammunition, 49 rounds of 9-millimeter ammunition, tactical body armor containing heavily armored rifle plating, an AR-15 magazine pouch which contained loaded magazines, a trauma medical kit, and an improvised explosive device (IED) which was found in the closet and later detonated by the bomb squad.

¶ 9 The State proffered that defendant's girlfriend indicated that defendant would order parts for the homemade weapons and would mill and assemble them himself. Defendant's FOID card was previously revoked due to an order of protection in Coles County case No. 16-OP-94. He was later convicted of possession of a firearm with a revoked FOID card in Coles County case No. 17-CF-353, which was a Class 3 felony.

4

¶ 10    The State proffered that Detective Eric Haughee of the Mattoon Police Department spoke with defendant in the past few days and indicated defendant was cognitive, walking, and recovering from his injuries. The State proffered that defendant remarked—regarding his possession of weapons—"that Illinois was a communist state, and he would be damned if he didn't have a gun to protect himself, which was why he acquired and assembled the un-serialized weapons in this case."

¶ 11    In response, defendant's counsel stated that he was "taken by surprise by the remarks made by Mr. Crisman allegedly in an interview with the detective. That was not provided to me in written or reported form. So[,] I have a difficult time responding to any of those." Counsel stated that the only criminal history was in Coles County. He stated that his client, as a result of the September 17, 2023, incident, was now blind in his right eye, had a hole in his tongue, and was undergoing continuing medical care. He did not have any children and was previously employed at Sarah Bush Lincoln Health Center in the emergency room as an EMT. Counsel stated defendant was receiving both medical and psychiatric treatment. Counsel further proffered that defendant had been sober since the event and was currently taking numerous medications for his physical and mental health. Counsel stated that defendant's firearms were seized on September 17, 2023, and there was no evidence that since his release from the hospital, defendant obtained more guns. Counsel proffered, with regard to the IED, that the report he received was that it was "counter charged" but he did not know what that meant. He said there was a picture taken of it and did not know if they could prove it was actually an explosive device or whether it was a firecracker.

¶ 12    Counsel argued that defendant was not a danger to the community or to himself. He stated that conditions could be imposed, including refraining from alcohol, seeking mental health treatment, and continuing physical treatments. He stated that defendant was released from the

hospital in early October and there was no indication that defendant posed a threat to himself or anyone in the community since his release. He stated his client would be willing to wear an ankle monitor if the court believed that would be a proper condition for his release.

¶ 13    The State argued that defendant was charged with multiple nonprobational offenses each of which carried significant prison time and defendant posed a real and present threat to the safety of himself and people in the community based on the facts of the case set forth in the proffer. The State argued that the proof was evident or the presumption great that defendant committed the offenses, and that defendant posed a real and present threat to the safety of others due to the sheer amount of armament that he acquired for himself, including tactical body armor. The State further argued that defendant expressed contempt for the law regarding his possession of a weapon as a felon and his previous weapons conviction of possessing a firearm with a revoked FOID card. The State argued that defendant had a previous history of violent or abusive nature as shown by a previously issued order of protection and engaged in irrational behavior by shooting himself in the head after being reasonably confronted while intoxicated. The State further argued that defendant knew how to make firearms and manufactured at least three of the firearms alleged in the five counts, along with an improvised explosive device. The State argued that no condition or combination of conditions would mitigate the real and present threat to the safety of the community and defendant should be detained.

¶ 14    In response, defense counsel added that he did not read in the reports that defendant personally manufactured the ghost guns. He stated that he did not know that defendant knew how to build the guns.

¶ 15    The court stated that it heard the proffer, the arguments presented and reviewed the petition and pretrial investigation report. The court found by clear and convincing evidence that the proof

6

was evident or the presumption great that the defendant committed a qualifying offense. The court also found, by clear and convincing evidence, that defendant posed a real and present threat to the safety of himself, as well as the community. The court noted that there were multiple firearms, body armor, and evidence of the use of firearms, that being the shooting of himself on September 17, 2023.

¶ 16     The court then determined whether clear and convincing evidence established that a condition, or combination of conditions, would mitigate the real and present threat to the safety of any person or persons. The court found that the State met that burden as well, noting that

> "there was *** actual use of a weapon, that being upon himself. The evidence of defendant's psychological, psychiatric, or other similar social history, tends to indicate a violent abusive or assaultive nature, that being the use of the weapon, the statement made with regards to possessing weapons in the [S]tate of Illinois and the prior conduct of the defendant. The statements made or attributed to the defendant, together with the circumstances surround[ing] impose a clear threat of harm to the named victim. That named victim being the community and himself. The Court also notes the body armor. The Court notes the statement made as possessing a gun because Illinois is a quote communist state. There is evidence of access to weapons. For these reasons, the Court does enter the Order of Detention on this date."

Thereafter, the court advised defendant of his appeal rights and defense counsel advised that he would be filing a notice of appeal.

¶ 17     The court issued a written order of detention on December 22, 2023. The order found the proof was evident or the presumption great that defendant committed a qualifying offense, defendant posed a real and present threat to the safety of any person or persons or the community,

7

and no condition, or combination of conditions, could mitigate the real and present threat to the safety of any person or persons. The order further stated, that in addition to the findings made by the court on the record, the following factors supported the denial of pretrial release: (1) the evidence shows that the defendants actions were violent in nature, or included the use or threat of a weapon; (2) evidence of the defendant's psychological, psychiatric, or similar social history tends to indicate a violent, abusive, or assaultive nature; (3) statements made by, or attributed to the defendant, together with the circumstances surrounding them, posed a clear threat of harm to the named victim; and (4) there was evidence that the defendant had access to weapons. Defendant timely appealed. Ill. S. Ct. R. 604(h)(2) (eff. Oct. 19, 2023).

¶ 18                                                    II. ANALYSIS

¶ 19    Pretrial release—including the conditions related thereto—is governed by statute. See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023). A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2022). In order to detain a defendant, the State has the burden to prove by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense; (2) the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk; and (3) less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f).

¶ 20    In considering whether the defendant poses a real and present threat to the safety of any person or the community, *i.e.*, making a determination of "dangerousness," the trial court may consider evidence or testimony concerning factors that include, but are not limited to, (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence

8

involving a weapon or a sex offense; (2) the history and characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code of Criminal Procedure of 1963 (Code) (*id.* § 110-5). *Id.* § 110-6.1(g).

¶ 21    To set appropriate conditions of pretrial release, the trial court must determine, by clear and convincing evidence, what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.*

¶ 22    Our standard of review of pretrial release determinations is twofold. The trial court's factual findings are reviewed under the manifest weight of the evidence standard. *People v. Swan*, 2023 IL App (5th) 230766, ¶ 12. " 'A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not

9

based on the evidence presented.' " *Id.* (quoting *People v. Deleon*, 227 Ill. 2d 322, 332 (2008)). We review the trial court's ultimate determination regarding the denial of pretrial release for an abuse of discretion. *Id.* ¶ 11. "An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the trial court." *Id.*; see *People v. Heineman*, 2023 IL 127854, ¶ 59. "[I]n reviewing the circuit court's ruling for abuse of discretion, we will not substitute our judgment for that of the circuit court, 'merely because we would have balanced the appropriate factors differently.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 15 (quoting *People v. Cox*, 82 Ill. 2d 268, 280 (1980)).

¶ 23    Defendant's notice of appeal requested reversal of the detention order and release with standard conditions. In the alternative, defendant requested a new detention hearing with all discovery provided to counsel in advance of the hearing. The notice of appeal listed the following issues: (1) whether the State met its burden of proof that the proof was evident or the presumption great that defendant committed the charged offense(s); (2) whether the State met its burden of proof that defendant posed a real and present threat to the safety of any person(s) or the community, based on the specific articulable facts of the case; (3) whether the State met its burden of proof that no condition, or combination of conditions, could mitigate defendant's dangerousness based on the specific, articulable facts of the case; (4) whether the court erred in its determination that no condition, or combination of conditions, would reasonably ensure defendant's appearance for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor; and (5) whether defendant was denied an opportunity for a fair hearing prior to the entry of the order denying or revoking pretrial release. In support, defendant provided facts and arguments in the lines below each issue more particularly addressed below.

10

¶ 24    The Office of the State Appellate Defender (OSAD) filed a Rule 604(h)(2) memorandum on January 30, 2024. OSAD raised three issues on appeal. It first argued that the State failed to prove that defendant posed a real and present threat to the safety of any person or the community. In support, OSAD argued that since there was no evidence that defendant had a violent history and the evidence did reveal positive changes since the September 2023 incident, the trial court's finding of dangerousness was against the manifest weight of the evidence. It further argued that while the State claimed defendant had a violent or abusive history based on the previously issued order of protection, the issuance of said order did not necessarily mean defendant harmed or threatened anyone. OSAD further argued that defendant's threat to himself was not a basis for detention in section 110-6.1 (725 ILCS 5/2-110-6.1 (West 2022)) and therefore detention was not an appropriate solution in such situation.

¶ 25    OSAD next argued that the trial court erred in finding the State presented clear and convincing evidence that less restrictive conditions failed to mitigate any threat posed by defendant's release. It contends, citing *People v. Stock*, 2023 IL App (1st) 231753, ¶¶ 17-19, the State presented no evidence or argument that defendant would fail to comply with available conditions. OSAD argued that defendant was taking the proper steps to treat his physical and mental health conditions and had not harmed anyone, including himself, since the incident in September.

¶ 26    Finally, OSAD argued defendant was denied a fair detention hearing where the State failed to tender defendant's alleged statement to the police prior to the hearing. OSAD relies on section 110-6.1(f)(1) that requires the State to tender to the defendant prior to the hearing "any written or recorded statements, and the substance of any oral statements." 725 ILCS 5/110-6.1(f)(1) (West 2022). OSAD relies on *People v. Mezo*, 2024 IL App (3d) 230499, ¶¶ 9-12, in which the court held

11

that the State's failure to tender defendant's criminal history prior to the hearing denied the defendant a fair hearing.

¶ 27 The State filed its Rule 604(h)(2) memorandum on February 16, 2024. Therein, the State argued that it met the required burdens of proof regarding defendant's commission of the charged offenses, his dangerousness, and the lack of any less restrictive conditions to undermine defendant's dangerousness. The State further argued that defendant forfeited the claim of an unfair pretrial release hearing, or in the alternative, the violation was harmless error. For these reasons, the State urged affirmation of the detention order.

¶ 28 Defendant first argues in his notice of appeal that the State failed to prove by clear and convincing evidence that the proof was evident or the presumption great that he committed the offense charged. In support, defendant argues that there was no proof by proffer or otherwise that defendant was in actual possession of body armor. OSAD provided no argument on this issue. The State argued that it proffered evidence (1) that defendant possessed a pistol on September 17, 2023, which he used to shoot himself in the chin, (2) of defendant's prior felony, and (3) the cache of weapons found following the search.

¶ 29 Defendant's underlying charge of a felon in possession of a weapon, classified as a Class X felony, is a qualifying offense. See 725 ILCS 5/110-6.1(a)(1) (West 2022). Upon our review of the record, we agree that the State's proffer addressed defendant's possession and use of a pistol to shoot himself, a prior felony, and a search of defendant's home that revealed tactical body armor with heavily armored rifle plating, and numerous weapons. Accordingly, we find defendant's initial argument has no merit.

¶ 30 Defendant next argues that the State failed to meet its burden of proving by clear and convincing evidence that he posed a real and present threat to the safety of any person, persons, or

12

the community. In support, defendant argued that the State failed to prove that defendant had access to any weapons because any weapons alleged to be possessed by defendant were seized on the night of the alleged offense. OSAD did not advance defendant's theory in its memorandum. Instead, OSAD argued there was no evidence that defendant had a violent history, the evidence revealed positive changes in defendant since the September 2023 incident, and defendant's threat to himself was not a basis for detention in section 110-6.1 (*id.* § 110-6.1). The State argued that the nature and circumstances of the offense indicate defendant poses a real and present threat as exhibited by his irrational and dangerous behavior culminating in a shooting and his possession of a large quantity of weapons, including home-built firearms and an IED. The State further argued that dangerousness was shown by defendant's psychological history, including previous harm to others and himself, as well as his access to weapons.

¶ 31 We find no merit in defendant's initial contention that he no longer had access to weapons due to the police officers' seizure of his weapons. The State's proffer revealed that defendant had the ability to order parts for the home-built weapons and would mill and assemble them himself. The State's proffer also indicated that an IED was found in the residence and later detonated by the bomb squad. Both proffers reveal defendant's ability to create homemade weapons, which leads to an inference that defendant would be equally capable of creating homemade weapons if released.

¶ 32 OSAD's argument is equally infirm. It contends that a previously issued order of protection against defendant in Coles County was insufficient to find defendant was violent or abusive because the issuance "did not necessarily mean defendant harmed or threatened anyone." However, the issuance of an order of protection is governed by the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/101 *et seq.* (West 2022)). Under the Act, " '[a]buse' means physical

13

abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation ***." *Id.* § 103(1). All of those terms contained within the definition of abuse are further defined. See *id.* § 103(7), (9), (10), (14), (15). After reviewing those definitions, we fail to see how any of the actions contained in the Act's definition would not be considered either a "harm" or a "threat" to someone.

¶ 33    OSAD's claim that defendant's threat to himself was not a basis for detention under section 110-6.1 is equally without merit. The basis of detention is statutory. See 725 ILCS 5/110-6.1 (West 2022). As noted above, the statute requires the State to prove by clear and convincing evidence that the proof is evident or the presumption great that defendant committed a qualifying offense, that defendant's pretrial release poses a real and present threat to the safety of any person, persons, or the community, and no condition, or combination of conditions, will mitigate the threat posed by defendant. *Id.* § 110-6.1(e)(1)-(3). While defendant's self-inflicted gunshot wound was not charged as a qualifying offense in this matter, a qualifying offense was certainly charged. Further, the act of an attempted suicide does pose a "real and present threat to the safety of any person" as required by section 110-6.1(e)(2) (*id.* § 110-6.1(e)(2)). The statute provides no exception for a self-inflicted injury and there was no evidence presented that defendant would not fall within the definition of "any person."

¶ 34    Here, the trial court found defendant posed a danger to both a person and the community. It noted that there were multiple firearms, body armor, and evidence of the use of firearms as shown by defendant's shooting of himself on September 17, 2023. Given the proffers submitted and the pretrial services investigative report, we cannot find the trial court's findings were against the manifest weight of the evidence.

14

¶ 35 Defendant next argues that the State failed to meet its burden of proving by clear and convincing evidence that no condition, or combination of conditions, could mitigate his dangerousness and the court erred in making such finding. In support defendant argued that he had been out of the hospital for over two months and no allegations of any real or perceived threat during that time were presented. He further argued that the State failed to show any evidence why less restrictive conditions would not ensure his appearance or prevent additional charges. He argues that his risk of reoffending score was low, he was engaged in counseling, and had been sober since the incident. On appeal, OSAD addresses a portion of defendant's argument and contends the State failed to present evidence or argument that defendant would fail to comply with available conditions. The State argued that evidence of a failure to reoffend was rebutted by defendant's statement that he refused to live in Illinois and not have gun. This statement showed contempt for Illinois laws related to felons possessing firearms.

¶ 36 We find that the arguments presented by defendant and OSAD have little merit because they both fail to address defendant's ability to build homemade weapons including firearms and IEDs, especially in light of defendant's defiance to possess a weapon in Illinois despite law prohibiting same. We find these facts illustrate defendant's unlikely compliance with conditions of pretrial release, most notably, a requirement that defendant not possess weapons.

¶ 37 The trial court was equally persuaded by these facts as noted in its oral pronouncement at the hearing. The court found that no condition or combination of conditions would mitigate defendant's dangerousness based on defendant's "actual use of a weapon" on himself, defendant's statement regarding a need to possess weapons in Illinois, his prior conduct, and his access to weapons. Given the evidence presented, we cannot find the trial court's finding was against the manifest weight of the evidence.

15

¶ 38    Here, none of the trial court's findings related to a qualifying offense, dangerousness, or a lack of condition, or combination of conditions, available to mitigate defendant's dangerousness were against the manifest weight of the evidence. As such, we hold that the trial court's ultimate disposition, denying pretrial release, was not an abuse of discretion.

¶ 39    Finally, defendant argues that he was denied a fair hearing prior to the entry of an order denying his pretrial release. In support, defendant argues that the State relied on a statement allegedly made by defendant. The statement in the notice of appeal further contends the statement was "reported to be a recorded statement" and the court relied on the statement. Defendant further contends the State refused or failed to provide the statement prior to the hearing and no information was tendered to counsel that such a statement existed until the State's proffer because no "written report summarizing the alleged statement was given to defense counsel."

¶ 40    OSAD acknowledges this argument and further contends the State's failure to provide the statement prior to the hearing was contrary to the statute and a new hearing should be ordered pursuant to *People v. Mezo*, 2024 IL App (3d) 230499. In *Mezo*, the State failed to provide defendant with copies of his criminal history prior to the hearing. *Id.* ¶ 4. Defense counsel noted this failure and the trial court agreed that the statute required disclosure. *Id.* Despite counsel's noting the State's disregard of the requirement, the hearing proceeded, and the State relied on the prior convictions. *Id.* On appeal, the majority noted that there must be a reason the legislature included the requirement in the Code and those purposes included ensuring (1) the defense an adequate opportunity to respond to the State's petition, (2) the reliability of the information presented, and (3) a fair hearing. *Id.* ¶ 11. The majority ultimately found the State's failure to provide the criminal history prior to the hearing resulted in the hearing being "deficient." *Id.* The

16

majority reversed the trial court's order and remanded the case for a new hearing on the State's petition. *Id.*

¶ 41 Justice Peterson dissented in the decision. *Id.* ¶ 17. Justice Peterson did not disagree that the legislature's inclusion was laudable but found defense counsel's failure to request relief from the trial court precluded review based on the doctrine of forfeiture. *Id.* ¶ 19. More specifically, the dissent noted that at no time did defense counsel request any remedy related to the violation that would have required the court to issue a ruling that would have been reviewable by the appellate court. *Id.* While the remainder of the dissent addressed a second detention hearing held in the case and the propriety of the majority's remand order given defense counsel's actions at the second hearing (*id.* ¶ 20), neither of which are applicable here, the dissent does raise interesting points as to what is required of defense counsel in such situation.

¶ 42 While we agree that, on its face, a similar remand would be required here, our review of the record and other case law reveals the opposite. First, the State's petition specifically stated, "The Defendant later expressed that he knowingly pursued the acquisition of firearms despite his status as a felon after recovering from his self-inflicted wounds." At the beginning of the hearing, the trial court specifically asked defense counsel if he had received a copy of the State's petition and defense counsel stated it had a copy. The court then asked defense counsel if he was ready to proceed and defense counsel replied, "I am." As such, defense counsel was clearly aware of the fact that his client provided a statement that indicated he knowingly pursued the acquisition of firearms despite the illegality of such pursuit based on his prior felony.

¶ 43 The State's proffer indicated that defendant's actual statement contended that Illinois "was a communist state" and defendant "would be damned if he didn't have a gun to protect himself, which [was] why he acquired and assembled the un-serialized weapons in this case." The State

17

further proffered that defendant's statement was made to Detective Eric Haughee of the Mattoon Police Department sometime "in the past few days." At no time during the State's proffer did defense counsel raise any objection as to the State's proffer.

¶ 44 After the State completed its proffer and reserved its argument, the court allowed defense counsel to proceed. Counsel started by stating, "The first thing I would indicate is, as I go back through the report that I read—received and read yesterday, I am taken by surprise by the remarks made by Mr. Crisman allegedly in an interview with the detective. That was not provided to me in written or reported form. So[,] I have a difficult time responding to any of those." Thereafter, defense counsel presented his own proffer. At no time during his proffer did defense counsel (1) object to any portion of the State's proffer, (2) move to strike any objectionable portion of the State's proffer, or (3) submit any request that would allow the court or the State to cure any alleged defect or error in the proceedings.

¶ 45 Instead, the hearing proceeded, and both the State and defense counsel made arguments regarding the proffers. Despite the State addressing the statement again during its argument by stating defendant "expressed contempt for the law regarding his possession of a weapon as a felon" again, defense counsel raised no objection to the argument and never moved to have the argument stricken. When defense counsel was provided an opportunity to provide argument, counsel stated, "I made most of that in my proffer. I would just add, Judge, I don't—I did not read in the reports that Mr. Crisman personally manufactured the—for lack of a better phrase—ghost guns. So[,] I don't know that he knows how to build them." Therefore, at no time did defense counsel object to the State's proffer or request any relief due to the State's alleged failure to provide information related to its proffer. Nor did defense counsel present any argument to the trial court that his client's pretrial release hearing was unfair due to the State's reliance on defendant's statement.

18

¶ 46    Following argument, the trial court provided its findings. Included in the findings were the following: (1) "The statements made or attributed to the defendant, together with the circumstances surround[ing] impose a clear threat of harm to the named victim"; and (2) "The Court notes the statement made as possessing a gun because Illinois is a quote communist state." After the court issued those findings, defense counsel said nothing and, again, never claimed the court's reliance on the defendant's statements rendered the hearing unfair.

¶ 47    The dissent presented in *Mezo* has merit and is further bolstered by Illinois Supreme Court precedent. The importance of a timely objection is well established. See *People v. Trefonas*, 9 Ill. 2d 92, 98 (1956). In *Trefonas*, the Illinois Supreme Court explained the importance as follows:

"The function of the objection is, first, to signify there is an issue of law, and secondly, to give notice of the terms of the issue. An objection to the admission of evidence, to be available, must be made in apt time, or it will be regarded as waived. The general rule is that the admission of incompetent evidence must be objected to, if at all, at the time of its admission. Objections to evidence should designate the particular testimony considered objectionable and point out the objectionable features complained of. Failure to make proper and timely objection to the admission of evidence claimed to be incompetent or otherwise objectionable or to move to strike it out after its admission, giving specific reason for the objection or motion to strike out such evidence generally constitutes a waiver of the right to object and cures the error, if any. *** A party cannot sit by and permit evidence to be introduced without objection and upon appeal urge an objection which might have been obviated if made at the trial." *Id.*

¶ 48    "When a defendant procures, invites, or acquiesces in the admission of evidence, even though the evidence is improper, [the defendant] cannot contest the admission on appeal." *People*

19

*v. Bush*, 214 Ill. 2d 318, 332 (2005) (citing *People v. Caffey*, 205 Ill. 2d 52, 114 (2001); *People v. Payne*, 98 Ill. 2d 45, 50 (1983)). "This is because, by acquiescing in rather than objecting to the admission of the allegedly improper evidence, a defendant deprives the State of the opportunity to cure the alleged defect." *Id.*

¶ 49    While we note the use of the word "waiver" in *Trefonas*, we are equally aware of more recent precedent addressing the difference between waiver and forfeiture and their use in prior decisions. See *People v. Sophanavong*, 2020 IL 124337, ¶ 20 (citing *People v. Hughes*, 2015 IL 117242, ¶ 37); *People v. Blair*, 215 Ill. 2d 427, 444 n.2 (2005). "Forfeiture is defined 'as the failure to make the timely assertion of [a] right.' " *Sophanavong*, 2020 IL 124337, ¶ 20 (quoting *People v. Lesley*, 2018 IL 122100, ¶ 37). "Waiver, on the other hand, 'is an intentional relinquishment or abandonment of a known right or privilege.' " *Id.* (quoting *Lesley*, 2018 IL 122100, ¶ 36). As clarified in *Sophanavong*, and more recently addressed in *People v. Jackson*, 2022 IL 127256, ¶ 15, we believe the failure to timely object seen here, as well as in *Trefonas*, is more consistent with forfeiture than waiver. A similar conclusion regarding a failure to object related to a pretrial services investigatory report was also seen in *People v. Keys*, 2024 IL App (1st) 231880-U, ¶ 20. Therein, the court stated, "Keys failed to raise this objection below, and it is forfeited." *Id.*

¶ 50    Here, defense counsel was aware, following his review of the petition, that his client made a statement indicating "that he knowingly pursued the acquisition of firearms despite his status as a felon." Despite receiving no information regarding the alleged statement, at no time during the hearing did counsel object, or request any relief from the trial court, related to the State's use of defendant's actual statement at the hearing. Counsel's failure to object deprived the trial court of any opportunity to correct the error and forfeits the issue on appeal. *Jackson*, 2022 IL 127256, ¶ 15. No request for plain-error review, that would possibly avoid forfeiture, was raised on appeal.

20

See *People v. Coats*, 2018 IL 121926, ¶ 9. Accordingly, we will honor the forfeiture. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010) (failure to request plain-error review forfeits that review).

¶ 51                                    III. CONCLUSION

¶ 52    For the reasons stated herein, we affirm the trial court's order granting the State's petition to deny release.


¶ 53    Affirmed.